OREN CLARK *versus* WILLIAM BOSWORTH.

Prior to the Revised Statutes of 1841, the visible possession of an improved estate by the grantee under his deed, by himself or his tenant, was constructive notice of the sale to subsequent purchasers, although his deed was not recorded.

This rule is still in force as to deeds made prior to the Revised Statutes of 1841, even against conveyances made since those statutes went into effect.

ON EXCEPTIONS, by plaintiff, to the ruling of CUTTING, J. REAL ACTION. The case is stated in the opinion.

*J. H. Hilliard,* for the plaintiff.

*Sewall,* for defendant.

The opinion of the Court was drawn up by

BARROWS, J. — Both parties claim title to the premises in controversy under Edward Smith, and the main question for decision is, which has the better title? Let us look at the history of their respective titles. The demandant claims by virtue of an attachment made May 30, 1837, on a writ in favor of Thomas A. Hill, against Edward and Samuel Smith, and a levy in pursuance of said attachment made on the premises as the property of Edward Smith, March 17, 1842, and a quitclaim deed from Hill, the levying creditor, to himself, in consideration of $100, dated March 23d, 1857, and recorded August 28, 1861. No continuing possession of any part of the premises followed either this levy or the quitclaim deed, but the respondent seems to have been in the visible possession of a considerable portion of them during all this time, and for two years, at least, prior to the attachment under which the demandant claims; and it appears, that, as early as 1835, the respondent erected a shop thereon, which, with the additions made in 1843 or 1844, is some 50 or 60 feet long; that, in 1844, he built a house thereon, and has occupied both buildings ever since they were erected, the latter as his own home; and that he

has used the land as his own since 1835, without let or hindrance, except the nominal interruption created by the levy in 1842. Such portions of the demanded premises as the respondent did not occupy were occupied by other persons who do not appear to have had any connection with the demandant or the title under which he claimed. The respondent claims to derive title to himself (by mesne conveyances, which it is unnecessary to recite,) through two deeds conveying the whole of the premises claimed by the demandant, which have never been recorded and are now said to be lost, but which are referred to in a deed of the same premises from one Benjamin Dyer to William H. Cheever, which was recorded August 15, 1833.

Was there competent and sufficient evidence of the existence of the deeds from Edward Smith to J. G. Bakeman, dated April 6, 1833, and from said Bakeman to B. Dyer, dated April 20, 1833, and, if proved, what was the legitimate effect of the respondent's possession under these unrecorded deeds upon the demandant's subsequently acquired title?

Upon referring to the testimony of Bakeman and Dyer we cannot doubt the loss or destruction of these deeds, and the objection to the *competency* of the secondary evidence is but faintly supported by the demandant's counsel in his ingenious and elaborate argument, and the authorities which he cites upon this point, unexceptionable in themselves, do not apply to the facts developed by the testimony here.

The testimony was *competent*—was it *sufficient* to prove the existence and execution of the deeds? We do not see how clearer proof could be expected after the lapse of nearly thirty years. True, Dyer does not profess to remember the details about the witnessing and acknowlegement of the deed from Bakeman to himself, but he testifies explicitly, that he had such a deed, and few who undertake to do business are ignorant of the ordinary requisites of a simple conveyance of real estate.

Both these deeds are referred to and their dates given in

the conveyance from Dyer to Cheever, made and recorded a few months later, and acknowledged before Samuel Cony, who, as Bakeman testifies, drew, witnessed and took the acknowledgement of the deed from E. Smith to him.

Upon the facts thus developed, the presiding Judge instructed the jury that, if the defendant at the time of Hill's attachment was in possession and occupancy of the premises as tenant under Cheever, it would authorize them to infer such constructive notice of Smith's deed to Bakeman as would defeat the attachment of Hill, and plaintiff could not recover in this suit.

The jury did find such constructive notice and returned a verdict for defendant. Were the rights of the demandant prejudiced by the instructions? Prior to the passage of the Revised Statutes in 1841, it had been well settled, by a series of decisions, that the visible possession of an improved estate by the grantee under his deed was implied notice of the sale to subsequent purchasers, although his deed had not been recorded.

In 1841, the rule was changed and thereafterwards actual notice was required, and the doctrine of constructive notice, as to all subsequent transactions of that description, was done away.

But, in *Hanley* v. *Morse*, 32 Maine, 287, while these doctrines were reaffirmed, it was decided that, previous to 1841, as against a subsequent grantee, such constructive notice was equivalent to a registry of the deed, and that the rule of constructive notice was still in force as to deeds made prior to the Revised Statutes of 1841, even against conveyances made since those statutes were passed.

While we fully recognize the learning and ability of the Judge who dissented from that conclusion, neither the force of his reasoning, nor the argument of the demandant's counsel here, satisfies us that that decision should now be overturned. Each year that has passed since it was promulgated, while it has diminished the number of cases to which it can apply, has increased the improbability that any

Clark v. Bosworth.

really innocent purchaser would ever find himself a sufferer by paying his money for a title apparently good upon the records, but defeated by an open visible possession commencing previous to 1841, under an unrecorded deed, and continuing thenceforward.

If we adopt the doctrine of the majority of the Court in *Hanley* v. *Morse*, then, in conformity with the reasoning of TENNEY, J., dissenting in that case and citing *Hewes* v. *Wiswell*, it does follow that the title of Clark, the demandant, must stand or fall with that of Hill, his grantor. His counsel complains that "the charge of the Judge mingled the fortunes of Hill and the plaintiff here together, and the verdict of the jury consigned them to a common fate." And why not? If the doctrine that an open visible possession of improved real estate should operate as notice to a subsequent purchaser of title in the possessor, and if such a possession, continued for two years, affected Hill with a notice of the respondent's rights in the premises, it is difficult to perceive why such possession, continued for twenty years more, before the plaintiff here purchased Hill's interest, and fortified by the erection and occupancy of a dwellinghouse upon the premises, for some thirteen years, should not suggest to the demandant in this case that it would be a fraud upon his neighbor's rights to purchase and set up a paper title that had been suffered so long to lie dormant. If the possession of the respondent was notice to Hill and would preclude his recovery, *a fortiori*, it was so to the demandant, and would prevent him from recovering on the same grounds.

The case of *Hewes* v. *Wiswell*, 8 Maine, 94, was a totally different one. There the Court rightly sustained the title of an innocent purchaser, for value, from a fraudulent grantee who had long been in possession as against a claimant under an unrecorded deed, the grantee in which had only been in possession for a short time, many years before.

The tenant there could not be supposed to have had any knowledge of the brief possession of the premises by the

grantee in the unrecorded deed, which possession had terminated even before the fraudulent grantee acquired his title, leaving the estate wholly unprotected. See the concluding portion of the opinion of the Court in that case, on page 100.

On the whole, we do not perceive that the plaintiff here has been deprived by the rulings of any rights which he can lawfully maintain, and accordingly the

*Exceptions are overruled.*

APPLETON, C. J., CUTTING, DAVIS, KENT, WALTON and DICKERSON, JJ., concurred.